UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                  Plaintiff,<br><br>     v.<br><br>ROBERTO SUAREZ,<br><br>                                  Defendant. | Case No. 20-cr-03570-BAS-1<br><br>**ORDER DENYING MOTION TO REDUCE SENTENCE PURSUANT TO FIRST STEP ACT (ECF No. 68)** |

Defendant Roberto Suarez has moved for compassionate release. (ECF No. 68.) The Government opposes. (ECF No. 73.) For the reasons stated below, the Court **DENIES** the motion.

**I.    Background**

Defendant pled guilty to distributing methamphetamine with at least a five-year mandatory minimum sentence. (Presentence Report ("PSR"), ECF No. 35.) In his thirty-nine years, Defendant has managed to accrue quite a list of criminal convictions. (PSR ¶¶ 39–60.) This case is Defendant's fourth felony conviction involving drugs. He also has two misdemeanor convictions for possession of a controlled substance. Besides the drug convictions, Defendant has a domestic violence conviction, a DUI conviction, a disorderly

conduct based on drug/alcohol intoxication, and a felony false impersonation of another. As a result, Defendant's criminal history category is a VI. (*Id.*)

Defendant clearly has a drug problem. He admits he has been using methamphetamine for fifteen years and marijuana for over twenty years. (PSR ¶¶ 74–75.) He was repeatedly terminated from the California Proposition 36 program for noncompliance. He did complete the CRASH drug program in 2010 but relapsed two years later. (PSR ¶ 77.) If he is unable to participate in the Bureau of Prisons ("BOP")'s Residential Drug Abuse Program ("RDAP") while in custody, Probation recommends that he participate in an in-patient drug treatment program. (PSR ¶ 110.)

At the time Defendant was sentenced, Probation calculated his guideline range to be 235 to 293 months but recommended that he only be sentenced to 120 months in custody. (PSR ¶¶ 115–16.) Defendant told the Probation Officer that he started having seizures in November 2020 due to anxiety. He claimed he also suffered from migraines. (PSR ¶ 70.) Defendant also told the Probation Officer that since he had been incarcerated, he had multiple anxiety panic attacks and "some of these attacks would lead to having seizures needing medical attention." (PSR ¶ 71.)

The Court found additional departures appropriate leading to a guideline calculation of 120 to 150 months. (Sentencing Tr. 14:9–10, Mot. Ex. A, ECF No. 68-1.) The Court varied downward from this guideline range because of Defendant's medical conditions and sentenced Defendant to 96 months in custody. (*Id.* 14:11–13; ECF No. 50.)

Defendant has now served almost three years of his eight-year sentence. His projected release date is August 9, 2027. (Mot. Ex. H, ECF No. 68-1.) He is currently wait-listed for RDAP, and he has been referred to non-residential drug treatment, which he hopes to begin soon. Defendant also provides evidence that while in custody, he has worked for UNICOR, repairing Border Patrol cars, has worked as a barber, and has taken continuing education classes.

Defendant moves for compassionate release arguing that he has received inadequate treatment for his physical and medical conditions. Additionally, he argues that he needs to

be released to take care of his sixty-four-year-old mother.  (ECF No. 68.)  Defendant also filed a supplemental brief addressing the U.S. Sentencing Commission's amended guidelines for compassionate release with additional exhibits.  (ECF No. 77.)

With respect to the first ground, there is conflicting information about whether Defendant has a seizure disorder or not.  The medical records from the BOP are contradictory.  On February 23, 2022, they reflect Defendant denied a history of seizures.  (Mot. Exs. S, T, ECF No. 68-1.)  On April 14, 2022, the records state "patient was never diagnosed with a seizure disorder nor was he taking any seizure medications."  (*Id.*)  September 22, 2022, records also indicate Defendant denied any history of seizures.  (*Id.*)  However, other records list one diagnosis for Defendant as "epilepsy/seizure disorder-remission."  (*Id.*)

Defendant has provided a report from an expert neurologist, who has never had the opportunity to examine Defendant, but agrees the medical records are contradictory. (Mot. Ex. R, ECF No. 68-1.)  The neurologist notes that Defendant has been prescribed Topiramate, which can be used to treat a seizure disorder, but not in the low doses Defendant is receiving.  He opines that the medication could have been provided for Defendant's anxiety disorder.  Defendant and his expert argue that he needs a full neurological evaluation, including an MRI and an EEG to determine whether Defendant has a need for anti-epileptic drug therapy.  However, even Defendant's medical expert opines merely that Defendant's "medical history includes details representing risk factors for the development of a seizure disorder," and not that he is suffering from a seizure disorder.  (*Id.*)

With respect to the second ground, Defendant indicates that his mother's partner of thirty years died on May 30, 2023.  He provides evidence that she suffers from "mild degenerative changes" in her lumbar spine, "mild osteoarthritis involving the bilateral hip joints," and a recent torn meniscus in her knee.  (Mot. Ex. U, ECF No. 68-1.)  She states in a declaration that it is difficult for her to get out of bed, get dressed, and open doors because

she has trouble using her fingers. (*Id.* ¶ 3.)  She would like Defendant to be released to give her support both physically and mentally. (*Id.*)

Defendant has a brother who is five years older than he is. (Mot. Exh. M, ECF No. 68-1.)  This brother states that once Defendant is released, he can help Defendant with anything he may need.  "I have a car and can transport him to medical appointments and work if needed." (*Id.* ¶ 9.)  Defendant argues this brother is unable to care for his mother because he has a full-time job and is diabetic. (Mot.)

Defendant provides evidence that on June 5, 2023, he requested compassionate release from the Warden at FCI Victorville, where he is being housed.  This request was denied.  Defendant's counsel then sent a follow-up supplemental request on August 21, 2023.  Defendant has not received a response to this second request. (Mot. Exs. B–G, ECF No. 68-1.)

## II. Analysis

### A. The Law

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, grant a defendant's motion to modify his or her term of imprisonment.  A court may grant the defendant's motion for a modification in sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*  Since Defendant demonstrates he has exhausted his administrative remedies, the Court proceeds to analyze his arguments for compassionate release.

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] section 3553(a)" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*  This "[c]ompassionate release is rare and extraordinary, and courts routinely deny such claims." *United States v. Mata*, No.

3:15-cr-44-JO-15, 2021 WL 851876, at *2 (D. Or. Mar. 5, 2021); *United States v. Hayden*, No. 3:11-cr-393-JO, 2020 WL 4674108, at *2 (D. Or. Aug. 11, 2020). As the movant, the defendant bears the burden to establish that he is eligible for compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

Under the Sentencing Guidelines, "extraordinary and compelling reasons" include the medical circumstances of the defendant. U.S.S.G. § 1B1.13 (effective November 1, 2023). Such circumstances exist if:

> The defendant is—
> 
> > (i) suffering from a serious physical or medical condition,
> > 
> > (ii) suffering from a serious functional or cognitive impairment, or
> > 
> > (iii) experiencing deteriorating physical or mental health because of the aging process,
> 
> that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13(b)(1)(A).

Additionally, extraordinary and compelling reasons can exist if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided or without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *Mata*, 2021 WL 851876, at *2. In addition, unless the defendant can demonstrate that the failure to receive medical care would lead to a serious risk of deterioration in health or death, compassionate release is not justified. Compassionate release is not the appropriate vehicle to raise a concern about simple inadequate medical care without such a risk. *See United States v. Lopez-Buelna,* No. 2:09-cr-113-GMV-EJY-2, 2023 WL 2020064, at *2 (D. Nev. Feb. 15, 2023). "[T]he proper avenue for relief is the road the Supreme Court laid out in *Estelle v. Gamble*,

429 U.S. 97 (1976)." *Id.* (quotation omitted). A compassionate release motion "is not the proper vehicle to assert a medical neglect claim." *Id.* (quotation omitted).

Family circumstances can be grounds for compassionate release where there is "(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). Such a circumstance requires that the defendant demonstrate that he is the only caretaker available to take care of the parent. *United States v. Cyre*, No. 2:19-cr-0008, 2021 WL 1394125, at *4 (W.D. Wash. Apr. 13, 2021); *see also United States v. Rand*, No. 3:16-cr-29-MMD-WGC-1, 2021 WL 4394782, at *5 (D. Nev. Sept. 24, 2022); *United States v. Bragg*, No. 12-cr-3617-CAB, 2021 WL 662269, at *2 (S.D. Cal. Feb. 19, 2021) ("[T]he defendant must make a robust evidentiary showing that the defendant is the only available caretaker." (quotation omitted))). Courts routinely deny motions for compassionate release when inmates cannot show that they would be the only available caretaker. *United States v. Cruz-Rivera*, No. 11-42, 2020 WL 5993352, at *5 (E.D. Pa. Oct. 9. 2020) (collecting cases).

## B. Physical and Mental Conditions

Defendant fails to demonstrate that his medical conditions rise to the level of extraordinary and compelling reasons justifying release. To the extent he argues that he is receiving inadequate medical care and needs additional tests through a neurologist, a compassionate release motion is not the appropriate method to seek this care. He fails to demonstrate that the failure to receive such care would result in a risk of serious deterioration in health or death.

Although the Court shares Defendant's concerns about Defendant's anxiety attacks, the information about any seizure disorder is conflicting. Additionally, Defendant has been sufficiently healthy to work and take classes while he is in custody. This showing is a far cry from a defendant who is unable to take care of himself in custody and who suffers from a debilitating disease from which he is not likely to recover. Defendant is receiving medical care. He is being prescribed medication for his concerns. If he believes this care is insufficient, he needs to proceed via other routes.

### C. Family Circumstances

Although Defendant's mother clearly suffers from many medical concerns, it is not clear from the documents submitted that she is actually incapacitated and unable to care for herself. In addition, it is not clear why Defendant's brother, who is willing to help Defendant with everything he may need, including transportation to medical appointments and to work, cannot do the same for his mother.

Finally, even if this compassionate release motion were granted, it is unlikely Defendant would be allowed to live with his mother. He will be on supervised release, and the Probation Department recommended that, if Defendant were unable to receive treatment through RDAP while in custody, he should be released to residential treatment. This Court agrees. Defendant has repeatedly been offered and participated in drug treatment without lasting success. Releasing him to his mother instead of a residential program, when he has received no drug treatment while in custody, would be setting Defendant up for failure. Therefore, even if this motion were granted, Defendant would not be able to provide the support to his mother he claims he would.

### D. Section 3553(a) Factors

Even if the Court finds extraordinary and compelling reasons exist for Defendant's release, the Court may still deny the motion if it finds Defendant's history and characteristics, as well as the substantial time remaining on his sentence, do not support relief. *See, e.g.*, *United States v. Helm*, No. 21-30003, 857 Fed. App'x 326 (9th Cir. Aug. 26, 2021) (unpublished); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021).

Defendant has a lengthy criminal record. He also has a lengthy history of drug abuse, despite rehabilitation efforts. He has not yet had the opportunity to participate in drug treatment while in custody. He has not yet served even half of his original sentence. Even if the circumstances warranted Defendant's release under § 3582(c), he fails to show that the § 3553(a) factors support such a release.

The Court is pleased that Defendant has taken advantage of his time in custody to work and take continuing education classes. The Court has every reason to believe that,

when offered, Defendant will take advantage of the drug treatment program as well. But releasing Defendant at this point would not provide just punishment for the offense, especially given Defendant's past criminal record, nor would it afford adequate deterrence to criminal conduct or protect the public from further crimes of the Defendant. Therefore, this inquiry militates against granting the motion as well.

### III.   Conclusion

Defendant fails to demonstrate that extraordinary and compelling reasons justify his release from custody. Additionally, the § 3553(a) factors do not support his request. Therefore, his Motion to Reduce Sentence Pursuant to First Step Act (ECF No. 68) is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 15, 2023

Hon. Cynthia Bashant
United States District Judge